IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RAYMOND A. BUTLER JR.,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>JOHNATHAN ROCKMAN, Counselor;<br>RICHARD KELLER, Administrator; and<br>ROD BAUER, Administrator;<br><br>　　　　　Defendants. | 8:23CV68<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Plaintiff's Motions for Leave to Amend, Filing No. 11, Filing No. 13, and Filing No. 14; and Motion to Appoint Counsel, Filing No. 12. The Motions to Amend will be granted, so the operative pleading will be Plaintiff's pro se Fourth Amended Complaint filed with his most recent Motion to Amend on May 10, 2023. Filing No. 14 at 3-17. Plaintiff has been given leave to proceed in forma pauperis. Filing No. 8. The Court is required to conduct an initial review of prisoner and in forma pauperis complaints pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. For the reasons stated, after careful review, Plaintiff has not stated a claim upon which relief can be granted and Plaintiff's Motion to Appoint Counsel will be denied.

**I. MOTIONS TO AMEND**

Federal Rule of Civil Procedure 15 provides that the Court should "freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a). Plaintiff's first Motion to Amend seeks to correct deficiencies "prior to the Court's initial review," Filing No. 11 at 1. Plaintiff's second Motion to Amend adds some facts to support existing claims and an exhibit, Filing No. 13 at 1. Plaintiff's third Motion to Amend seeks to correct

the jurisdiction and included additional facts to demonstrate intertwinement. Filing No. 14 at 1. Each of Plaintiff's Motions to Amend includes a proposed amended complaint. The Court finds that Plaintiff's Motions to Amend should be granted and the Fourth Amended Complaint, attached to Filing No. 14, will be the operative complaint in this action.

## II. SUMMARY OF COMPLAINT

Plaintiff brings this action under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). Plaintiff is a black male and federal pre-trial detainee on pretrial release. Filing No. 14 at 6. On July 21, 2022, he was accepted into the Sienna Francis House Miracles Program (the "Miracles Program"). *Id.* at 5. The Court's records[1] indicate that Plaintiff was required to participate in the Miracles Program as a condition of pretrial release. *United States v. Butler*, Case No. 8:22cr94, Filing No. 32 at 2 (D. Neb. July 21, 2022). Defendant Jonathan Rockman, a white male, was assigned to be Plaintiff's substance abuse counselor. Filing No. 14 at 5. Participants in the Miracles Program were not in custody and participants are free to leave at any time. *Id*.

Each Saturday, participants in the Miracles Program could order dietary items and snacks. *Id*. Because of personal dietary restrictions, Plaintiff would order and then carefully mark and date his dietary items and place them in a refrigerator designated for participants in the program. *Id.* at 6. Though Plaintiff does not specify a date, he alleges that after about two weeks, he noticed his dietary items were "slowly coming up missing." *Id.*

---

[1] "The district court may take judicial notice of public records and may thus consider them on a motion to dismiss." *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003). The Court can take judicial notice of its own records and files, and facts which are part of its public records. *United States v. Jackson*, 640 F.2d 614, 617 (8th Cir. 1981). The Court takes judicial notice of its own records for purposes of this case.

2

Plaintiff spoke to a staff member about the missing dietary items and told the staff member that Plaintiff believed a specific group of white males was committing the thefts. *Id.* At a subsequent house meeting, the staff member reminded all men in the Miracles Program to respect the property of others. *Id.*

Without identifying the dates, Plaintiff states that "over the course of about 5-7 days" he observed specific white males openly stealing Plaintiff's personal dietary items. *Id.* at 7. The thefts caused Plaintiff to miss meals and affected Plaintiff's overall focus. *Id.* Plaintiff told Rockman about the thefts and identified the individuals who took the dietary items. *Id.* Rockman became agitated and told Plaintiff to worry about himself and not what others were doing. *Id.* Rockman also told Plaintiff to stop allowing the actions of others to "live 'rent-free' in [his] head." *Id.*

Because Rockman would not take action, Plaintiff spoke to Defendant Richard Keller, a white male, to tell him that Plaintiff was not comfortable with Rockman as Plaintiff's counselor. *Id.* Plaintiff also told Keller about the thefts and requested that the zero-tolerance rule be enforced due to Plaintiff's medical issues. *Id.*

At a subsequent house meeting, where Rockman and Defendant Rod Bauer were present, Keller announced that because of an audit, participants in the Miracles Program could no longer accept special food deliveries, that participants could no longer store food in the refrigerator, and that EBT food stamps would not be permitted for fast food deliveries. *Id.* at 8. Plaintiff alleges that Bauer would have had to approve this announcement. *Id.* Plaintiff alleges that, upon his information and belief, there was no audit and that Defendants removed these privileges to deprive Plaintiff of his right to equal protection "due to their dislike of a black person asking for fair treatment from whites." *Id.*

3

After the announced restrictions and subsequent medical issues due to eating food outside of his dietary restrictions, Plaintiff began to store food in his room. *Id.* at 11. Keller later discovered the food hidden in Plaintiff's room and ordered Plaintiff to a disciplinary session called "solutions." *Id.* Plaintiff explained to Keller that Plaintiff had to store food in his room to prevent it from being stolen. *Id.* Plaintiff alleges that none of the white participants who stole his food were placed in "solutions," nor did they receive any other discipline. *Id.*

At some point during the "solutions" process, Rockman ordered Plaintiff to "write down all the crimes [he] did not get caught for." *Id.* Rockman told Plaintiff that this exercise was a requirement to complete the "solutions" program. *Id.* Rockman told Plaintiff to think about what would happen if he failed to complete the program. *Id.* Plaintiff immediately told his attorney about Rockman's instructions. *Id.*

On September 29, 2022, Plaintiff submitted another complaint to staff. *Id.* at 12. Later that day, United States Marshals arrived at the Miracles Program to arrest Plaintiff. *Id.* The Marshals escorted Plaintiff to his living quarters to retrieve his personal property, accompanied by Rockman. *Id.* Plaintiff alleges that most of his property had gone missing, including all clothing, cash, and paperwork. *Id.* Plaintiff asserts that "upon information and belief," Rockman, with Keller and Bauer's approval, gave away or threw away his personal property. *Id.*

Plaintiff also alleges that Rockman, with Keller and Bauer's approval, falsified his discharge summary to the federal government. *Id.* Plaintiff explains that he had received "rave reviews" from Rockman as recently as two-weeks prior to discharge. *Id.* at 13. Plaintiff's discharge summary indicates that he was discharged for violating the Miracles

Program rules and expectations and states Plaintiff "took food and clothing without permission, hid food in his room, failed to meet the COVID-19 mask wearing guidelines, was late for classes, group and individual sessions, and bullied fellow peers." *Id.* at 19. The discharge summary indicates that after Plaintiff was discharged, "a significant amount of contraband was found hidden in his room." *Id.* Plaintiff alleges that his discharge summary was inconsistent with the positive report from Rockman to Plaintiff's pretrial officer. *Id.* at 13.

Plaintiff alleges that Defendants illegally and unconstitutionally removed him "as a black from the Miracles Program rather than hold any white male accountable for the acts" described in the Fourth Amended Complaint. *See Id.* at 14. Plaintiff seeks a declaration that Defendant's actions violated the Constitution; an "Affidavit of Truth" from each of the Defendants of the willful and intentional violation of Plaintiff's constitutional rights; punitive damages of $200,000.00; and compensatory damages of $100,000.00. *Id.* at 15.

### III. STANDARDS ON INITIAL REVIEW

The Court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim,

5

and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## IV. ANALYSIS OF COMPLAINT

The Court has carefully reviewed Plaintiff's Fourth Amended Complaint, keeping in mind that complaints filed by pro se litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers. See *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984). Additionally, "[t]hough pro se complaints are

6

to be construed liberally, they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (internal citations omitted) see also Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989) ("[W]e will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded"); Cunningham v. Ray, 648 F.2d 1185, 1186 (8th Cir. 1981) ("[P]ro se litigants must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law.").

The Fourth Amended Complaint fails to sufficiently plead an action under *Bivens*. While the Supreme Court in *Bivens* recognized a cause of action against a federal agent "acting under color of federal authority," 403 U.S. at 389, Plaintiff has not alleged facts showing Defendants were federal government actors in this case. In the analogous context of litigation under 42 U.S.C. § 1983,[2] courts have considered several factors to examine whether a private party can be considered a state actor, including a government's involvement in the private party's work; the degree to which the government and the private party are mutually dependent; and whether the private entity performs a traditional government function. See Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (examining the government's involvement in a private party's activities); Burton v. Wilmington Parking Authority, 365 U.S. 715, 725 (1961) (examining whether the government and private party have a mutually dependent relationship); Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982) (examining whether a private party carried out a traditional public function).

---

[2] "As a general rule, *Bivens* claims and [42 U.S.C. § 1983] claims are almost identical and involve the same analysis." Solomon v. Petray, 795 F.3d 777, 789 n.7 (8th Cir. 2015).

7

Even if these factors are also applicable in a *Bivens* action against private individuals like Defendants, Plaintiff has not alleged sufficient facts to show Defendants acted under color of federal authority. Plaintiff does not allege any non-conclusory facts about the relationship between the federal government and Defendants. Plaintiff alleges that by "being 'accepted' into the Miracles Program, the court/government has delegated to Bauer, Keller, and Rockman a power normally reserved for the pre-trial officer." Filing No. 14 at 13. However, no facts support this conclusion. The Court's records indicate that Plaintiff was on pretrial release and was not in federal custody while he was in the Miracles Program. *United States v. Butler*, Case No. 8:22cr94, Filing 32 at 2 (D. Neb. July 21, 2022). Plaintiff's own allegations confirm he was not in federal custody and participants were free to leave at any time. Filing No. 14 at 5.

Further, Plaintiff confirmed that his pretrial officer continued to monitor Plaintiff during his participation in the Miracles Program. *See* Filing No. 14 at 13. Thus, no allegation suggests the federal government delegated away any responsibilities of a pretrial officer. Plaintiff has not alleged facts showing that the federal government and the Miracles Program were mutually dependent or entwined merely because Plaintiff's participation in the program was a condition of release. There is no indication from Plaintiff's allegations or the judicially noticed facts that the federal government delegated its responsibilities to Defendants nor do any facts or allegations show Defendants were performing a traditionally public function. Because the allegations in the Fourth Amended Complaint, even taken as true, do not show that Defendants were federal government actors, Plaintiff's constitutional claims must be dismissed.

## V. MOTION TO APPOINT COUNSEL

There is no constitutional or statutory right to appointed counsel in a civil case. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013) (per curiam). A district court "may request an attorney to represent" an indigent civil litigant, 28 U.S.C. § 1915(e)(1), but it has a "good deal of discretion" in deciding whether to do so, *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011). "Relevant criteria for determining whether counsel should be requested include the factual and legal complexity of the case, the plaintiff's ability to investigate the facts and to present the claims, and the presence or absence of conflicting testimony." *Recca v. Omaha Police Dep't*, 859 Fed. Appx. 3, 4 (8th Cir. 2021) (unpublished) (citing *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996)); *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). Plaintiff's pleading is coherent and shows he has a basic understanding of applicable law and procedure. Plaintiff has also demonstrated an ability to investigate the facts. Having carefully considered the record, the Court will not appoint counsel at this time.

## VI. CONCLUSION

Plaintiff's Motions to Amend are granted; however, Plaintiff does not allege sufficient facts to state a plausible claim under *Bivens*. Thus, no claim is stated upon which relief may be granted. Consequently, Plaintiff's Complaint is subject to dismissal under 28 U.S.C. §§ 1915(e) and 1915A. However, the Court on its own motion will give Plaintiff an opportunity to allege sufficient facts to state an actionable claim for relief.Plaintiff's Motion to Appoint Counsel is denied.

IT IS THEREFORE ORDERED:

1. Plaintiff's Motions for Leave to Amend, Filing No. 11, Filing No. 13, and Filing No. 14, are granted consistent with this Memorandum and Order.

2. Plaintiff shall have 30 days to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Plaintiff. In the amended complaint, Plaintiff must comply with federal pleading requirements. If Plaintiff seeks to assert claims for constitutional violations, he is encouraged to use the enclosed Form Pro Se 14 Complaint for Violation of Civil Rights (Prisoner Complaint).

3. In the event Plaintiff files an amended complaint, Plaintiff shall restate the allegations of the Fourth Amended Complaint, Filing No. 14 at 3-17, and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

4. The Court reserves the right to conduct further review of Plaintiff's claims in the event he files an amended complaint.

5. The Clerk of the Court is directed to send to Plaintiff a copy of the Form Pro Se 14 Complaint for Violation of Civil Rights (Prisoner Complaint)

6. The Clerk of the Court is directed to set a pro se case management deadline using the following text: **October 2, 2023**—amended complaint due.

7. Plaintiff's Motion to Appoint Counsel, Filing No. 12, is denied without prejudice to reassertion.

Dated this 1st day of September, 2023.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge